81 F.3d 167
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Yuk Lai Wycliffe CHAN, Plaintiff-Appellant
v.
Faye LOTHRIDGE, Director, Asylum Office, United States
Immigration and Naturalization Service, San
Francisco, et al., Defendant-Appellee.
 No. 94-16936.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 7, 1995.
Decided March 22, 1996.
 
 Before: BROWNING, CANBY and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The appellant, Yuk Lai Wycliffe Chan, asks us to reverse an order of the district court denying him preliminary and permanent injunctive relief against certain officials of the Immigration and Naturalization Service ("INS"). Chan argues that the INS abused its discretion in denying him interim work authorization while his application for asylum was pending. We disagree and affirm the order of the district court.
 
 
 3
 Under the INS regulations in effect at the time Chan filed his application, and which continue to govern his case,[1] an alien who submits a "nonfrivolous" application for asylum may obtain permission to work in the United States while his application is pending. 8 C.F.R. § 274a.12(c)(8). "Frivolous" is defined as "manifestly unfounded or abusive." 8 C.F.R. § 208.7(a). On October 1, 1993, the INS rejected Chan's request for interim work authorization relying on an INS regulation, which prohibits asylum for applicants found to be "firmly resettled" in a third country. See, 8 C.F.R. §§ 208.14(c)(2) (barring asylum for aliens deemed "firmly resettled" in a third country); 208.15 (defining "firmly resettled"). This bar to asylum for firmly resettled aliens is categorical and clear. Thus, under the regulations, any asylum application that shows the applicant to have firmly resettled in a third country would be "manifestly unfounded," and the applicant would therefore be ineligible for interim work authorization.
 
 
 4
 * Chan contends first that regulation 208.14(c)(2) is ultra vires. Having considered Chan's arguments on this issue, we dismiss his facial challenge for the reasons stated in an accompanying case, Yang v. INS, No. 94-70439.
 
 II
 
 5
 Chan argues in the alternative that even if the regulation is permissible under its enabling statute, the district court wrongly denied that the INS abused its discretion in deeming Chan "firmly resettled" in Hong Kong. We, however, find no legal or factual error on the part of the district court.
 
 
 6
 As the district court observed, the INS based its determination squarely on the facts. Chan admits that he lived in Hong Kong for at least 12 years, and has a Hong Kong identity card. Under the applicable regulation, an alien is, prima facie, considered firmly resettled if he receives "an offer of permanent residenc[e] ... or some other type of permanent resettlement." See 8 C.F.R. § 208.15. The INS rationally found that Chan fell within this class of applicants.
 
 
 7
 Once the INS made this initial showing, Chan might have rebutted the presumption of firm resettlement with evidence that he had established "no significant ties" to Hong Kong, or that his conditions of resettlement were "consciously and substantially restricted" by the Hong Kong government. 8 C.F.R. § 208.15(a), (b). Chan did neither. His admitted ties to Hong Kong include a wife, who still lives there, and property. As to the conditions of his resettlement, Chan admitted many facts which, according to the regulation, reinforce the prima facie case against him: he admits he lived, worked and owned property in Hong Kong for many years. Furthermore, he seems to have had the right to travel abroad. Having failed to present any evidence at all of restriction by the Hong Kong government, Chan fit tightly within the definition of an alien firmly resettled.[2]
 
 
 8
 In its letter denying Chan interim work authorization, the INS brought the firm resettlement issue to his attention and invited him to reapply with evidence rebutting the presumption of firm resettlement. He failed to do so. In these circumstances, as the district court rightly observed, the INS can hardly be said to have abused its discretion in finding Chan firmly resettled in Hong Kong.
 
 III
 
 9
 The district court did not abuse its discretion in denying Chan injunctive relief. His application for interim work authorization disclosed virtually no chance of succeeding on the merits; furthermore, Chan has not even attempted to demonstrate an "irreparable injury" sufficient to counterbalance these thin prospects of success. Accordingly, the order of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Under the regulations that went into effect on January 4, 1995, the decision regarding interim work authorization no longer depends on an assessment of the merits of the underlying claim. See 59 Fed.Reg. 62284, 62299 (1994). These regulations are not retroactive, however, and do not apply to Chan's case. Id. at 62287
 
 
 [2]
 If, instead, we interpret Chan's claim to be that the new government of Hong Kong will restrict his civil liberties beginning in 1997, we would nevertheless find the evidence he presented inadequate to rebut the presumption of firm resettlement. Chan lived and preached openly in China for about 12 years, apparently without mistreatment at the hands of the Chinese government. He attested that the government surveilled his religious activities, but failed to show even a threat of action to suppress them. Moreover, it is at this point entirely speculative whether the Chinese government will actually curtail the civil liberties of religious minorities in Hong Kong, when it takes control in 1997